UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JAMES ALLEN BULLOCK,

Plaintiff,

v.

CONSTANCE REECE, TODD MILLER, DIVEN NAGLE, PAUL LIND, DAVID EDWARDY, and JEREMY ANDRIST,

Defendants.

Civil No. 01-1578 (DWF/AJB)

REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner, has filed an amended complaint, (Docket No. 20), seeking $10 million in damages from six named Defendants.[1] The matter is presently before the undersigned Magistrate Judge for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

For the reasons discussed below, the Court finds that Plaintiff's amended complaint fails to state a claim on which relief can be granted. It will therefore be recommended that this action be summarily dismissed pursuant to § 1915A(b)(1).

**I. BACKGROUND**

Plaintiff is an inmate at the Federal Medical Center in Rochester, Minnesota, ("FMC-Rochester"). He is attempting to sue several prison officials at FMC-Rochester,

[1] Plaintiff filed three separate pleadings at the outset of this case, (Docket Nos. 1, 4 and 5), none of which satisfied the bare minimum requirements for a civil complaint. By order dated September 14, 2001, (Docket No. 16), all of those initial pleadings were stricken, and Plaintiff was directed to file an amended complaint. On October 26, 2001, Plaintiff did file an amended complaint, (Docket No. 20), and that is now the operative pleading in this matter.

FILED OCT 31 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

based on a series of incidents that allegedly occurred at the prison starting in May 2001.

Plaintiff alleges that on May 12, 2001, Defendant Todd Miller accused him of stealing from another inmate. Plaintiff claims that the accusation was false, that the incident was never properly investigated, and that he was "frame[d]." He apparently was found guilty of the charged offense, however, and Defendant Devin Nagle allegedly assigned him to segregated confinement for some unspecified period of time.

The next day, (May 13, 2001), Defendant Nagle found some type of "weapon" in a "TV room," and concluded that it belonged to Plaintiff. According to Plaintiff, there was no proof that the weapon was his. The amended complaint does not indicate whether Plaintiff received any additional sanction in connection with that incident, although Plaintiff does allege that Nagle "harass[ed]" him, called him "disrespectfully names," said things that were "unprofessional," and "conspired... to keep [him] on lockdown segregation."

On July 11, 2001, Defendant Jeremy Andrist allegedly brought false charges against Plaintiff for throwing a tray. Plaintiff contends that the charges were brought so his term of segregated confinement could be extended. He claims that he was denied due process, that some type of sanction was imposed, (presumably an extension of his segregated confinement), and that he suffered "mental anguish."

On July 25, 2001, someone accused Plaintiff of causing a toilet to flood a floor. Although Plaintiff denied being responsible for the flood, some additional sanction was imposed, (evidently still more time in segregated confinement), and he suffered more "mental anguish." Plaintiff recently informed the Court that he was about to be transferred to a prison in "Butler, North Carolina," and thus it appears that his segregated confinement at FMC-Rochester has, or soon will, come to a close.

Finally, Plaintiff alleges that he suffers from "constant back pain," rectal bleeding, "HIV," and "chronic hepatitis C." He further alleges that Defendant David Edwardy, a doctor at FMC-Rochester, has failed to give him a "biopsy test" or allow him to have back surgery. The amended complaint does not describe the type of "biopsy test" Plaintiff is seeking, or why he believes it is necessary. Nor does Plaintiff's pleading indicate why he believes he needs back surgery. Plaintiff summarizes his claim against Defendant Edwardy by alleging simply "medical malpractice an[d] mental anguish."

Plaintiff is seeking $10 million for Defendant Edwardy's alleged malpractice, and for the "mental anguish" that the other Defendants allegedly caused him by allowing him to remain in segregated confinement for 5½ months.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

The Court concludes that the present action must be summarily dismissed pursuant to § 1915A(b)(1), because Plaintiff's amended complaint fails to state any claim on which relief can be granted. The amended complaint is defective in several respects.

A. Failure To Exhaust Administrative Remedies

First, Plaintiff has failed to state an actionable claim, because he has not alleged that he has exhausted all of his available administrative remedies, as required by 42 U.S.C. § 1997e(a). That statute, which was enacted in 1996 as part of the PLRA, provides that

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Section 1997e(a) clearly requires that prisoners must exhaust all of their available administrative remedies before they can challenge the conditions of their confinement in a lawsuit brought in federal court. "Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'" Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998), quoting 141 Cong.Rec. H1472-06, *H1480 (daily ed. Feb. 9, 1995). "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 121 S.Ct. 1819, 1825 (2001).[2]

---

[2] Our Court of Appeals has identified at least four valuable objectives that are promoted by an exhaustion-of-administrative-remedies requirement. First, exhaustion of administrative remedies helps to ensure a more complete development of the factual record before the matter is brought into court. Second, it gives the court the benefit of whatever special knowledge and experience the administrative agency might have to offer. Third, it acknowledges the autonomy and authority of administrative agencies. Finally, to the extent that claims can be resolved at the administrative level, an exhaustion requirement promotes judicial economy. Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976). See also, McCarthy v. Madigan, 503 U.S. 140, 145 (1992). When a litigant fails to satisfy an exhaustion-of-administrative-remedies requirement, he deprives the judicial process of these valuable benefits.

The Bureau of Prisons ("BOP") provides a comprehensive administrative remedy procedure for federal inmates with grievances relating to the conditions of their confinement. The Code of Federal Regulations, ("C.F.R."), prescribes a four-step administrative process for resolving complaints brought by federal prisoners: (1) the inmate must present his claim informally to an appropriate prison staff member; (2) if the claim is not resolved informally to the inmate's satisfaction, he must then present a formal written Request for Administrative Remedy; (3) if the prisoner is not satisfied with the warden's response to that request, he must appeal to the Regional Director; and (4) if the prisoner is still dissatisfied, he must take a final appeal to the General Counsel in the Central Office in order to fully exhaust his administrative remedies. 28 C.F.R. §§ 542.10-.16.

In this case, Plaintiff alleges that he filed a grievance with the Warden at FMC-Rochester, but he did not receive any response from her. (Amended complaint, p.2, §§ II.C. & II.D.) Plaintiff apparently believes that he should be excused from completing Steps 3 and 4 of the BOP administrative remedy process, (i.e., taking appeals to the Regional Director, and, if necessary, to the General Counsel of the Central Office), because of the Warden's alleged failure to respond at Step 2. Such reasoning must be rejected. The regulations governing the BOP administrative remedy process set deadlines for responding to inmate grievances. 28 C.F.R. § 542.18. Wardens are required to respond to Step 2 grievances within 20 days. Id. The regulations expressly state that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id. Thus, if the Warden at FMC-Rochester failed to respond to Plaintiff's Step 2 grievance within 20 days, (as Plaintiff alleges), that non-response was, in effect, a denial, which

should have prompted Plaintiff to proceed to Step 3 of the administrative remedy process; i.e., he should have filed an appeal with the Regional Director.

Taking only the initial steps in the BOP administrative remedy process, as Plaintiff apparently did here, does not exhaust all available administrative remedies. See Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990). Because Plaintiff failed to complete all four steps of the BOP's administrative remedy process, he did not satisfy the requirements of 42 U.S.C. § 1997e(a).

When a federal prisoner brings a civil rights action in federal court alleging that the conditions of his confinement are somehow illegal, he must affirmatively allege in his complaint that he has satisfied § 1997e(a) by exhausting the administrative remedies provided by the BOP at 28 C.F.R. §§ 542.10-.16. If his complaint fails to include factual allegations showing that the exhaustion requirement has been satisfied, then the prisoner has failed to state an actionable claim, and his complaint is subject to summary dismissal. McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000) ("dismissal on the pleadings is proper for failure to plead the exhaustion of all administrative remedies"). Because Plaintiff's present complaint does not show that he has exhausted his administrative remedies -- and, in fact, it clearly appears that he has not exhausted such remedies -- no actionable civil rights claim has been pleaded.

B. No Allegations Supporting Due Process Claim

Even if Plaintiff had satisfied the exhaustion-of-administrative-remedies requirement, his primary claim -- namely his due process claim -- would still be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

To maintain a due process claim, as Plaintiff apparently is attempting to do here, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). An actionable liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown that he has suffered the type of unusual hardship or dramatic departure from ordinary prison life contemplated in Sandin v. Conner, 515 U.S. 472 (1995).

In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. Our Court of Appeals has explained that, under Sandin, prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added).

Here, Plaintiff has not pleaded an actionable due process claim because the only "hardship" shown in his complaint is his removal from the general prison population for 5½ months. While Plaintiff's term of segregated confinement has undoubtedly been unpleasant, it does not constitute the type of "atypical and significant hardship" that will support a due process claim.

Sandin itself shows that segregated confinement does not normally constitute the type of "atypical and significant hardship" that implicates a constitutionally protected

liberty interest. Although the term of segregated confinement at issue in Sandin was only 30 days, other federal cases decided after Sandin establish that even much longer periods of segregated confinement do not constitute the type of hardship that can give rise to a due process claim.[3] There are quite a few federal court decisions rejecting due process claims based on periods of segregated confinement much longer than the 5½ months at issue in the present case.[4] At the same time, the Court is not aware of even one case in which a prisoner has been allowed to maintain a due process claim based on a term of segregated confinement of less than a full year.

Therefore, based on Sandin and its progeny, the Court concludes that Plaintiff's 5½-month term of segregated confinement does not, by itself, constitute the type

---

[3] In two unpublished decisions, the Eighth Circuit has found that periods of segregated confinement far longer than the 30 days involved in Sandin do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim). See also Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (10 days of disciplinary detention followed by 90 days in a maximum security cell, did not constitute an atypical hardship requiring the protections of due process).

[4] See e.g., Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (30 months); Griffin v. Vaughn, 112 F.3d 703 (3rd Cir. 1997) (15 months); Bonner v. Parke, 918 F.Supp. 1264 (N.D.Ind. 1996) (36 months); Dabney v. Anderson, 92 F.Supp.2d 801 (N.D.Ind. 2000) (36 months); Polanco v. Allan, No. 93-CV-1498 (N.D.N.Y. 1996), 1996 WL 250237 (12 months); Acosta v. McGrady, No. CIV.A. 96-2874 (E.D. Pa. 1999), 1999 WL 158471 (14 months); Johnston v. Vaughn, No. CIV.A. 00-CV-1844 (E.D.Pa. 2000) 2000 WL 1694029 (15 months). See also, Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners").

of hardship that would implicate a protected liberty interest. It follows that Plaintiff's due process claim could not survive the § 1915A screening process, even if Plaintiff had exhausted his administrative remedies.[5]

C. "Medical Malpractice" Claim

Aside from the due process claim discussed above, the only other claim that can be found in Plaintiff's amended complaint is a possible medical malpractice claim against Defendant David Edwardy. Plaintiff's claim against Defendant Edwardy would also be summarily dismissed pursuant to § 1915A, even if Plaintiff had satisfied the exhaustion-of-administrative-remedies requirement.

Plaintiff cannot sue Defendant Edwardy for common-law medical malpractice because the remedy provided by the Federal Tort Claims Act, ("FTCA"), is the exclusive remedy available to an individual seeking relief for injuries caused by the negligence of a federal employee acting within the scope of his or her employment. 28 U.S.C. § 2679(b)(1); United States v. Smith, 499 U.S. 160, 163 (1991) ("an FTCA action against the Government [is] the exclusive remedy for torts committed by Government employees in the scope of their employment"). Furthermore, Plaintiff's malpractice claim against Defendant Edwardy cannot be construed to be an FTCA claim (against the United States), because there is no indication that Plaintiff has exhausted the FTCA administrative remedy procedure. See Sanders v. United States, 760 F.2d 869, 872 (8th Cir. 1985) ("[t]he timely filing of an administrative claim and exhaustion of administrative remedies are jurisdictional

[5] The Court also specifically notes that Plaintiff has clearly failed to state any due process claim – or any other type of claim – against Defendant Paul Lind, because Lind is not ever mentioned anywhere in any of the substantive allegations of Plaintiff's pleading.

prerequisites to suit under the [FTCA]").[6]

The Court has also considered whether the allegations in Plaintiff's amended complaint could support an Eighth Amendment claim against Defendant Edwardy, brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). That is not possible, however, for at least two reasons.

First, it clearly appears that Plaintiff is asserting a malpractice claim against Defendant Edwardy – not an Eighth Amendment claim. The section of the amended complaint that presents Plaintiff's claim against Edwardy expressly refers to "medical malpractice;" there is no mention of the Eighth Amendment, "cruel and unusual punishment" (which is proscribed by the Eighth Amendment), or the Constitution generally.

Second, there are no factual allegations showing that Defendant Edwardy has acted with deliberate indifference toward any serious medical need of Plaintiff, which is the sine qua non of an Eighth Amendment medical mistreatment claim. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). At most, it appears that Plaintiff merely disagrees with Edwardy's prescribed course of treatment for Plaintiff's alleged medical concerns. Such a disagreement will not support an Eighth Amendment claim. Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's mere disagreement with course of treatment

---

[6] The administrative remedies for an FTCA claim are different from those provided by the BOP at 28 C.F.R. §§ 542.10, et seq. Therefore, even if Plaintiff had exhausted his BOP administrative remedies, (thereby satisfying 42 U.S.C. § 1997e(a)), that would not make him eligible to bring an FTCA claim here.

It should also be noted that Plaintiff is currently barred from bringing an FTCA medical malpractice claim against Defendant Edwardy, because he has not complied with the "expert affidavit" requirements of Minn.Stat. § 145.682. See Oslund v. United States of America, 701 F.Supp. 710 (D.Minn. 1988); Bellecourt v. United States, 784 F.Supp. 623 (D.Minn. 1992), aff'd, 994 F.2d 427 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994).

prescribed by prison medical staff is not actionable under the Eighth Amendment).

D. "Mental Anguish" Claims

Finally, it should be noted that all of Plaintiff's claims appear to be barred by 42 U.S.C. § 1997e(e). This statute, which was enacted as part of the PLRA, provides that:

> "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury, suffered while in custody, without a prior showing of physical injury."

In this case, Plaintiff is seeking compensation only for his alleged "mental anguish." There are no factual allegations in the amended complaint suggesting that Plaintiff's alleged mental anguish was preceded or accompanied by any physical injury. Because Plaintiff evidently is seeking relief solely for mental anguish without any accompanying physical injury, all of his claims appear to be barred by § 1997e(e). See Zehner v. Trigg, 133 F.3d 459, 461-64 (7th Cir. 1997); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's amended complaint fails to state a claim on which relief can be granted, and that this action must therefore be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It follows that Plaintiff's application for leave to proceed in forma pauperis, ("IFP"), (Docket No. 3), must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $150 filing fee.[7] To date, Plaintiff has paid

---

[7] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words,

only $75, so he still owes the Clerk of Court another $75. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk in the manner prescribed by 28 U.S.C. § 1915(b)(2). Finally, the Court finds that the dismissal of this action should count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's "Application to Proceed Without Prepayment of Fees," (Docket No. 3), be **DENIED**;

2. This action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely $75, in accordance with 28 U.S.C. § 1915(b)(2); and

---

prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

4. For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."

Dated: 10/31, 2001

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.